## Laubaugh v. Pennsylvania Railroad Company, Appellant.

*Damages—Measure of damages—Destruction of personal property—Negligence.*

In an action to recover damages for goods negligently destroyed, where it appears that the property destroyed has no market value at the place of its destruction, all pertinent facts and circumstances are admissible in evidence that tend to establish its real and ordinary value at the time of its destruction, such facts as will furnish the jury, who alone determine the amount, with such relevant data as will enable them reasonably and intelligently to arrive at a fair value; to this end the original cost of the property, the manner, in which it had been used, its general condition and quality and percentage of its depreciation since its purchase or erection, from use, damage, decay or otherwise, are all elements of proof to be submitted to the jury to aid them in ascertaining its value.

*Evidence—Witness—Credibility—Testimony taken at former trial.*

The appellate court will not reverse a judgment because of the refusal to admit in evidence the testimony of a witness taken at a former trial, where it appears that the facts testified to by the witness at the second trial were established by the testimony of other witnesses, and that the claims in the two trials were distinctly different under the pleadings.

*Bankruptcy—Suit by trustee—Presumption of regularity of proceedings.*

In an action by a trustee in bankruptcy the presumption is in favor of the regularity of all proceedings leading up to the appointment of the trustee in bankruptcy, and that as trustee he complied with all the requirements of the law and was qualified to act.

Argued Jan. 12, 1905. Appeal, No. 64, Jan. T., 1905, by defendant, from judgment of C. P. Luzerne Co., May T., 1899, No. 390, on verdict for plaintiff in case of John I. Laubaugh, Trustee, v. Pennsylvania Railroad Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for destruction of plaintiff's goods. Before WHEATON, J.

The facts are stated in the opinion of the Superior Court.

Defendant presented these points:

4. It is admitted on the part of the plaintiff that she kept no account of the proceeds derived from the sale of the goods alleged to have been injured by the water, or the prices charged for the same, so as to approximately fix and determine the

extent of the depreciation in value of said goods, and the plaintiff's husband, who had charge of the business, further admits in his testimony that his estimate of the amount of the plaintiff's loss is based in part upon the assumption or supposition that the clerks in her employ sold said goods at the prices which he specified in his testimony, affords no reliable data to enable the jury to ascertain and determine the amount alleged to have been suffered by the plaintiff, and should be disregarded by the jury. *Answer :* I decline to charge as requested on that point. [4]

6. The burden of proof is upon the plaintiff to show affirmatively that she suffered damages from the defendant's negligence or tortious act, but she has not offered any evidence of such a definite and certain character as to enable the jury to ascertain the amount of actual damages which she alleges she sustained by reason of the flooding of her premises, and the jurors are not at liberty to guess at it or estimate it by any process of conjecture or surmise, when the nature of the issue, as shown by the facts and circumstances of this case, is susceptible of clear and definite proof. *Answer :* I decline to charge as requested on that point in its whole length and breadth. There are certain parts of it, if separated from the rest, I would affirm—that is to say, jurors are not to guess, of course—but taking the point as a whole I decline to affirm it. [5]

7. [The measure of damages in a case such as this would be the difference between the market value of the stock in its alleged state and what would have been its market value if sound, and there is no legal, definite and certain evidence in the case to establish this question, although the case is susceptible of such proof.] *Answer :* I decline to affirm that point as presented, although the statement of the law as to the measure of damages is entirely correct. [6]

5. It is admitted by the plaintiff that the proceeds of the sale of the alleged damaged goods were mingled with those derived from the sale of goods unaffected by the water in such a way as to preclude any opportunity or means to determine how much was realized from the one as distinguished from the other. *Answer :* I leave it to you to say whether that is so or not. There is not any principle of law involved in it and I

am not asked to charge upon any question of law. It is a statement of fact and the facts are all for your determination. [7]

8. If the jury believe that the manager, Thoma, told the truth on the former trial of this case two years ago, namely, that he did not know to whom the damaged goods were sold, nor in what quantities, nor for what prices, and had no way of giving said data, then this of itself is sufficient to discredit his testimony on the present trial relating to the same matters and justify the jury in rejecting his evidence altogether as unworthy of credence or belief. *Answer:* I decline to affirm that point. It is proper, however, to say to you in this connection that in so far as it appears in this trial that Mr. Thoma had been inconsistent as to his testimony here with what he testified to at the former trial that would be a matter for you to take into account as testing his credibility and ascertaining whether he has told the truth or whether he has not. But it is for you also to say by comparison of the testimony as offered whether it has been inconsistent or the contrary. The facts are for you. My recollection is that he testified on the former trial as upon this trial that he did not know the individuals to whom the damaged goods were sold, nor did he know specifically in what quantities. They were sold generally, he testified, in such quantities as people who came in wanted. He kept no account or book of sales that is conceded. It was conceded at the former trial and is at this trial the only book he had was an invoice book which he says has gone now into the hands of a receiver or somebody else. A bank book but no sales books. Nothing but a cash book. He explains to you the reason why he had no such books was because they did a cash business and therefore there was no necessity for other books than a cash book. It is for you to say now whether that is an explanation. It is for you also to say whether his testimony in this trial as to the amount, the prices for which he sold these things is inconsistent with his former statement that the goods were depreciated in the cellar fifty per cent of their cost price. There is no evidence in this case that you are trying what the cost price of the goods was. The evidence in this case has been the market price and the selling price. The evidence in the other case was fifty per cent of the cost price. [8]

The court charged in part as follows :

[The damage in this case, if you shall find that damage was sustained, is the value of the goods which were destroyed and the depreciation in value of the goods which were not destroyed, as occasioned by the injury. The true basis is compensation for the loss sustained and nothing more. As I have already said to you, if it be true and you find that the defendant is liable to respond in damages, the difference in the value of the goods, taking into account those that were actually destroyed, first, and afterwards the difference in the value of the goods which were not actually destroyed was, as Mr. Thoma testifies, then the amount which he testifies to in this case would be the amount of damages which the plaintiff has sustained ; $1,739.75, according to my recollection, being the total amount based upon the testimony of Mr. Thoma. As I have said to you, you are not absolutely bound by that testimony, Mr. Thoma's credibility is for you. You are to test it in the light of such interest as he has in the case or in the outcome of the case.] [9]

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

- *Errors assigned* were (1, 2) ruling on evidence referred to in the opinion of. the Superior Court ; (4–9) above instructions, quoting them.

*John McGahren*, with him *P. A. O'Boyle* and *H. W. Palmer*, for appellant.

*John T. Lenahan*, with him *James L. Lenahan* and *James C. Murray*, for appellee.

OPINION BY ORLADY, J., July 13, 1905 :

This action was brought to recover damages alleged to have been caused by the wrongful acts of the defendant company. The plaintiff was the owner of a lot of land adjoining that of the railway company, and on which she had erected a frame building one and one half stories high, with a concreted cellar, the whole being occupied as a grocery store. In the cellar she had a stock of general groceries, fish in barrels and bales, apples

and other fruits, potatoes, canned goods and a number of other articles usually kept for sale in a grocery store.

The defendant's roadbed was eight or nine feet above the level of the plaintiff's lot, and in February, 1899, after a heavy fall of snow, the defendant collected snow at various points along the line of its road and shoveled it from cars over the embankment at the rear end of plaintiff's lot and on adjoining property, to such an extent that the pile of snow was above the level of the defendant's tracks. A few days later, owing to a sudden change in the weather, a large quantity of water from this mass of melting snow accumulated in the plaintiff's cellar to the depth of fifteen or eighteen inches. The defendant's foreman of tracks, on being notified, made an opening into a sewer at the end of plaintiff's lot, which furnished an outlet for the water draining from the melting snow, and thereby the inundation of the cellar was relieved.

Some of the goods in the cellar were destroyed by direct contact with water, some were injured by dampness, others being soiled, fouled and damaged were rendered unsalable. The defendant contended that the location of the plaintiff's store-room was such that a large volume of water ran into the cellar from other sources than that claimed by her, and that the quantity of goods claimed by the plaintiff to have been in the cellar was not correct. We take it that the verdict disposed of these two propositions ; the principal legal question is as to the measure of damages adopted by the court in the charge to the jury, and the conduct of the plaintiff after the water came into the cellar. The goods were not removed until several days had elapsed, when it was found that they were in the condition above described. The reason given was that the plaintiff had no other place in which to store them, and that the damage was caused by the first contact with the water, so that a removal would not have been of advantage to anyone.

The court held in regard to the measure of damages as follows : " The damage in this case, if you shall find that damage was sustained, is the value. of the goods which were destroyed and the depreciation in value of the goods which were not destroyed as occasioned by the injury. The true basis is compensation for loss sustained and nothing more."

The goods were subsequently taken out of the cellar and advertised for sale by handbills and notices, and, the evidence clearly shows, were sold for the best price to be secured for that character of goods. The sales were made by the plaintiff and his clerks, and while no record was kept of individual sales, the parties having charge of them were subject to rigid examination at the hands of counsel, and the character of goods, extent of damage and the prices realized were fully developed before the jury.

Flood damaged goods of this character could not have any market value, as they were so exceptional in condition that no fixed or regular price could be ascertained, and there could not, in the nature of things, be any market demand for such property ; and in an action of this kind where the value of the property destroyed is the criterion of the amount of damages to be awarded and the property destroyed has no market value at the place of its destruction, then all pertinent facts and circumstances are admissible in evidence that tend to establish its real and ordinary value at the time of its destruction, such facts as will furnish the jury, who alone determine the amount, with such relevant data as will enable them reasonably and intelligently to arrive at a fair value ; to this end the original cost of the property, the manner in which it had been used, its general condition and quality and percentage of its depreciation since its purchase or erection, from use, damage, decay or otherwise, are all elements of proof to be submitted to the jury to aid them in ascertaining its value : 2 Joyce on Damages, sec. 1037.

The first and second assignments of error, relating to the testimony which Charles Thoma gave on a former trial of the case, are not material in the light of the record. The same facts were established by the testimony of other witnesses, and the claim in the former trial was distinctly different under the pleadings, nor do we think the tenth assignment of error has merit in determining the right of the plaintiff to maintain the action. The use plaintiff was asked : " Are you the trustee in bankruptcy of L. N. Thoma ? " To which he replied, " Yes, sir." The presumption is in favor of the regularity of all proceedings leading up to the appointment of the trustee in bankruptcy, and that as trustee he complied with all

the requirements of the law and was qualified to act. Without further search or investigation the plaintiff of record would be entitled to the verdict. The distribution of the fund would yet be under control of the court. The case was tried on its merits, after all the facts were fully developed through the rigid examination of all parties in interest.

The judgment is affirmed.